Good morning, and may it please the Court. My name is Michael Grimm. I'm appearing on behalf of the Petitioner, R. S. A. Lee Guzman. The legal basis for the agency's denial of the Adjustment of Status and the 212 waiver in this case was the legal conclusion that the Petitioner wasn't eligible as a matter of law, the current 212A9C of the current Immigration and Nationality Act. Mr. Grimm, help me out, if you will. I don't understand how that's so. Right. And so the government conceded that point in its 28-J letter that she's not ineligible for Adjustment or the waiver. Well, I don't know what they're talking about. I don't get their letter either. But as I look at the denial, which was on October 5th of 2007, the basis for the denial was not the 10-year bar, but the fact that she came back within a year, indeed within a month, of having been deported and came back without the permission of the Attorney General. I mean, it just seems very clear that the basis for that denial was not the 10-year bar. The basis for the denial that you mention in your reply brief and attach as an addendum came from 2009, and that's not before us. Right. I think in the denial of the Adjustment, I think there's a little bit of ambiguity in the decision because they cite to the current Immigration and Nationality Act. But they make it very clear in their bottom line that the reason for denial was the 10-year bar was not the 10-year bar, but the fact that she came back within a month  General. And that was contrary to the one-year bar. And I think the other ambiguity in that statement is that the decision indicates you did not remain outside the U.S. for the requisite period of time. Okay. Well, let me ask you a question. If my reading is correct, and it may not be, but if it's correct, then is there anything else that I'm missing about your case? I think that the agency should have given her the chance to submit that waiver in order to overcome that bar of inadmissibility. Well, can I think – I really think what happened is the reason the agency didn't do that is because I think they did believe that under the matter of Torres Garcia, the Rangazzola's opinion, 212a9c barred you from getting that waiver because you didn't remain outside the U.S. for 10 years. But I think if they really thought she was eligible, they would have given her the chance to submit that. But isn't our case law pretty clear that any application, even our overruled case, even if our case had not been abrogated, you'd still have to file a waiver to file that application, at least contemporaneously, with filing for an application? The waiver application. Yeah. And that wasn't done. Well, I – and unfortunately, the Respondent was self-represented. She prepared her own adjustment application with a lay person. I mean, that's unfortunate, but the point is it wasn't done. But the regulation on filing the waiver applications uses the term in conjunction. Yes. And I think that the agency chose that term to be flexible. Instead of saying before or at the same time or after, I think they used in conjunction, because sometimes the agency – But it wasn't. I mean, no matter – no matter how you define in conjunction, it's never been. So, I mean, it certainly wasn't done in conjunction with the reinstatement order. The argument is that she did file it in conjunction with, alongside or working together with the adjustment of status application. I think the agency, it would be obvious to them that this waiver is being submitted alongside this adjustment application, which – What's the interval between when she files the adjustment of status application and when she finally gets around to filing the I-212? How long of a period? The period? So she filed the adjustment – A couple of years, right? About two, I believe. How can that – how can it be in conjunction? Well, she filed the adjustment, I think it was in 2005, had an interview in January of 2006. Right. This issue came up in the interview. She was given a letter stating that it looks like you have what they call the San Diego file. We're going to go look at the other file. But how can a two-year interval be considered to be in conjunction with? Again, I think that any time before the decision being – I mean, the decision wasn't rendered until October 2007. Right. She didn't even do it before that. It's after that. It was certainly after that. It was certainly after she learned of that, I guess, that adverse evidence. And I think another one of the problems with this is that the ATFR, the 103.2, I think it's B-16 regulations indicate that when the agency discovers derogatory evidence, they call it, they are required to notify the applicant of that evidence. And at the time of the interview in January 2006, I don't think it was known that the agency – they know she had a file in San Diego. I don't think they knew it was in it. And only after they dismissed her from the interview and gave her a letter saying, we're going to look at your file. We'll notify you if we need more information. Then between January 2006 and October 2007, they discovered that exclusion order that makes her inadmissible, but they didn't give her a chance to look at that, respond to that in any way before they rendered the denial and notified ICE to reinstate her exclusion order. But you would agree there's no case from this circuit overruled in effect or otherwise that says that an I-212 that's filed after the removal is reinstated? No, I think that's an open question after the Morales-Escuero II decision. I think what happened – and that's from April of this year when the Court stated that – Morales was arguing that he should have had the chance even after. But the problem in that case with Morales is he couldn't show prejudice. He was inadmissible for the permanent bar. So even if he was permitted to file that waiver after the adjustment denial, it wouldn't help him. He'd be in that matter of Torres-Garcia situation. But in this case, Ms. Guzman isn't inadmissible under that bar. A successful waiver would cure her inadmissibility and render her eligible for penalty fee adjustment status. And I think, as this Court has stated before, the 245i and the reinstatement need to be read together in harmony so one doesn't cancel out the other. And 245i being an ameliorative statute, it would be given that ameliorative effect if a person that – if they're eligible for that waiver and it would cure the inadmissibility, I'd just at least give her the chance and let the agency make that discretionary determination, but not on a – not make that decision on erroneous legal conclusions, but that – because if it does cure her inadmissibility, 245i, this humanitarian provision would be given effect. And in any case, I think because the agency accepted and adjudicated the 212 waiver and Ms. Guzman believes that that's their concession, that it was filed in conjunction. They could have rejected it or denied it, saying that we're denying this because you didn't file it in time, you didn't file it in conjunction. But they didn't do that. They denied it based on that – the matter of Torres-Garcia decision. So we believe they conceded that issue. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Catherine Clark, appearing on behalf of the Attorney General. To clarify the 28J that Respondent filed last week, the basis for the denial of adjustment was, in fact, the unlawful return. That's absolutely correct. It was not the inadmissibility finding that CIS later rendered – that Citizenship and Immigration Services later rendered regarding – I'm sorry. I'm sorry. Just start over again. The adjustment denial, which is separate from the I-212 – The 2007. Right. The 2007 adjustment denial, which is separate from the I-212 denial. The 2007 adjustment denial was based on the unlawful return. That's absolutely correct. I filed the 28J in this case simply to correct both the error in the CIS document, but more importantly, Respondent's error in the brief to the effect that Petitioner was inadmissible under 212A9C. That was merely because I put forth that argument in the brief. Per the 1997 INS guidance, that is not correct, and I simply want to – Okay. Do I need to worry about it? I just don't understand. I'm sorry. No. Absolutely not. The reason that I put it forth in the 28J was just to correct the fact that I had put it forth in the brief, but it is entirely immaterial to the case. What is material to the case is the denial of adjustment and the failure to perfect the adjustment application by filing an I-212 waiver in a timely fashion along with that adjustment application and what – the time that's important in terms of when an I-212 waiver must be filed is that it must be filed in conjunction with the adjustment application and before the order is reinstated. The application for the I-212 waiver here was filed after the order was reinstated. It was filed three weeks later, and for that reason, it simply doesn't matter why the I-212 was denied. It was denied on an erroneous ground, but ultimately it also was not filed in a timely fashion. It was not filed before reinstatement. When you say it was denied on an erroneous ground, then are you talking about the 2009 denial? That's correct. Okay. I mean, it helps clarify. I mean, that's just irrelevant. Exactly. I mean, it's not before us. It's not exhausted. It's not anything. That's exactly right. And the only reason I put forth that explanation in the 28J was because I argued the inadmissibility under 212a9c, which was that erroneous ground, in the brief, because the INS guidance, located in the INS guidance, it does not. Okay. Never mind. It's just more confusing to me, at least to me. Maybe not to my colleagues. It makes no difference at all, and it's of no legal significance whatsoever. And, in fact, I believe Petitioner is essentially conceding that point by requesting an opportunity to file the I-212 non-protonc in this case. Morales' chiaro provides no basis whatsoever. What do you make of his in conjunction argument? It doesn't say at the time of. It doesn't say together with. It doesn't say immediately proceeding or proceeding. It says in conjunction with. I mean, I don't know. I can sort of see an argument that, you know, you file your appendix or your excepts of record in conjunction with your brief, but not necessarily at the same time. I mean, I don't know how rules work. Whether or not it needs to be. But, you know, I can certainly see where you would say things that are filed in conjunction with each other don't necessarily have to be filed at the same time, exactly the same time. The Court's case law does not establish that they need to be filed at exactly the same time. It's relatively silent on that point. However, it firmly establishes in Padilla, Perez-Gonzalez, and Duran-Gonzalez that the I-212 application must be filed prior to the initiation of reinstatement proceedings. That was not done here. It was filed three weeks after the initiation of reinstatement proceedings. That's the cutoff date here. And Morales'-Chiarido provides no flexibility on that point. The issue in Morales'-Chiarido, Nuc-Pro-Tonc was not, there was no holding on Nuc-Pro-Tonc ability to file an I-212 in Morales'-Chiarido. Instead, Morales'-Chiarido turned on the fact that the alien in that case was inadmissible on the ground 212a9c that did not apply in this case. Therefore, the cases are distinct. Morales'-Chiarido is entirely an opposite. And the remaining case law, Perez-Gonzalez, Padilla, and Duran-Gonzalez, to the extent that Duran-Gonzalez incorporates some of the prior reasoning of Perez-Gonzalez in cases like these, it forecloses Petitioner's ability to apply for an I-212 after reinstatement. His ineffective assistance of counsel argument is also not on point under Lara-Torres and Balam-Chuck. And also his argument with respect to the purported need to state that, Petitioner's also arguing that the DHS would have needed to notify Petitioner that her application was somehow defective. The regulation he cites for that proposition deals with requests for further evidence. This is a request for the he essentially would extend that regulation to require DHS to ask Petitioner to file a waiver application as well. Okay. I say in 25 words or less, why do you disagree with him? Because the I-212 was filed after reinstatement was initiated. Okay. And that simply precludes everything else. Everything else. Okay. It is an unfortunate case, right? She doesn't fall under the permanent bar, the 10-year bar. She falls under the one-year bar. And if she had been better counseled, she would have done things differently. She and, you know, according to everything we have, she seems like she would have stayed out for a year or filed her application three weeks earlier, that she would be all right. It's an unfortunate case. Laura Torres and Balamchuk speak precisely to that point, that even in unfortunate cases, there is no right to effective assistance of counsel outside the context of ongoing proceedings. And there were no ongoing proceedings during the period when she alleges an effective assistance here. Those cases were cases, in both Laura Torres and Balamchuk, Petitioner had, the aliens had not even gone the sort of extra step that Petitioner went here by reentering illegally. They were simply, they had come illegally only once. She came twice. So those were even more sympathetic circumstances than the circumstances here. And even in those two cases, the court simply found there's no right to effective assistance outside the context of ongoing proceedings. So whether or not the circumstances are unfortunate, the law is very clear. Is there any room to mediate this? No, there is not, because Petitioner is ineligible for adjustment of status for the reasons I explained previously. She did not file her application. Maybe the mediator wouldn't understand it and the reasons any better than I do. There's essentially no way for Petitioner to get relief in this case. Now that her order has been reinstated, the reinstatement bar to all relief under the Act applies. And so for that reason, there's just simply no avenue that could be pursued in mediation. And she is forever barred from all relief? From all discretionary relief under that 241A5 bar, yes. And regardless of the legal complexities surrounding the periphery of this case, the heart of the case is actually quite simple. The I-212 was simply filed after the reinstatement order was entered. Padilla, Perez-Gonzalez, Duran-Gonzalez, those are the only cases that the court needs to look to. And so if she had been better advised, she would have filed it, what, three weeks earlier? She would have been, my apologies, Your Honor, if she had been better advised. Potentially, if she had filed three weeks earlier, then the application could have been adjudicated and could have been applied. And if she had been granted an I-212 waiver, then she could have also applied for the waivers of her two other grounds of inadmissibility, and potentially she could have received adjustment of status. But ultimately, she did not apply within that interval. And in fact, she didn't just have, she had 11 years when she could have filed an I-212 after she came to the United States illegally for the second time. And she did not do so. So that three-week interval when, and it wasn't, Petitioner also, her adjustment application was actually filed by another individual, not the counsel that she alleges was ineffective, but it was not prepared by her. So there are many sort of layers here when she could have filed an I-212, but she did not. She had 11 years to do that. And she failed to do so until after her order was reinstated. All of a sudden, when the issue became an emergency for her, she did do it. And if there are court has no... None of us do that. And understand, it is understood, however, the law is very clear. And whether or not that clear law was discovered a bit later than it should have been, the law is nonetheless quite clear. Okay. Thank you. Thank you. So on the day that the CIS denied that adjustment application, they had, on the one hand, they had the chance to notify her that she could submit a waiver that could clear that inadmissibility bar and allow her to benefit from this humanitarian provision, this later enacted statute of 245I, to not to be sent back to Mexico and get a residency here. On the other hand, they had the option to notify ICE and reinstate that removal order and bar her from having the chance to submit that waiver. It's at that point the agency knew that she had a derogatory evidence. The regulation, 8 CFR 103.2B16, indicates that they should have notified her of that derogatory evidence before rendering a decision on the adjustment and notifying ICE of the reinstatement. And I think the Court has a chance to let 245I and 241A5, the reinstatement and the penalty fee adjustment, to operate in harmony. It could vacate the reinstatement order, remand the applications back to the agency for a correct legal determination, and if they were to choose to exercise their discretion in her favor, she could benefit from 245I. If they decide as a matter of discretion that she can't get the waiver, the order can then be reinstated. So both statutes can be given meaning in that way. Ms. Clark says that there's no right of effective assistance of counsel outside of, as she put it, ongoing proceedings, and there weren't any here. Respond to that, if you would. Well, it's, you have a right to a, an inmate has a right to effective assistance in a removal proceeding. Right. I don't really know. I don't know when a reinstatement proceeding begins, and I think it ends with the service of the decision, but when it begins, I'm not sure. I think the agent. It kind of happens all at once, is your point. I think, I'm not sure. I don't know when they got that file, when they started, but I think the agent that's interviewing her for the reinstatement, I really think that they knew of this adjustment application that was pending. I think they were kind of following the notion of the government that, well, she's permanently barred under the 10-year rule. I think that's what all the people in the agency thought at the time. So I think what they thought is she's not even eligible for the waiver. Even if we let her do it, she's going to be barred under Maddow-Torres-Garcia, but the agency now concedes that, well, that actually isn't a bar. She actually would be eligible for the waiver. So what they're saying is had you filed this on October 4th, 2007, you would probably benefit from 245i. But because you didn't file it until a few weeks after that, you don't get a benefit. You have to go back and pursue your permanent residency in your home country. I just don't think Congress wanted 245i to turn out that way. When there's somebody that could probably benefit from it, let's let the agency pursue all these avenues first. And that's what the petitioner is asking the court to allow to happen. Okay. Thank you. Thank you. The case is argued and submitted. That was the last case on the calendar. We are adjourned.
judges: Kennelly, Kozinski, Rymer